UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE 1, and JONE DOE 2,

                   Plaintiffs,

vs.

MATTHEW WEISS; the REGENTS
OF THE UNIVERSITY OF
MICHIGAN; the UNIVERSITY OF
MICHIGAN; KEFFER
DEVELOPMENT SERVICES, LLC,

                   Defendants.

Case No. 25-CV-10806
Hon. Mark A. Goldsmith
Mag. David R. Grand

---

## MOTION FOR EXPEDITED DISCOVERY

The purpose of this Motion is to stop further harm to Plaintiffs. Plaintiffs seek expedited discovery to protect themselves, preserve sensitive information, mitigate harm, and discover information that could be lost.

Plaintiffs, Jane Doe 1 and Jane Doe 2 ("Plaintiffs"), respectfully request entry of an Order granting them a right to expedited discovery substantially in the form of the proposed Order attached as **Exhibit A**, which relief would be against The Regents of the University of Michigan (the "Regents"), The University of Michigan

1

(the "University"), Matthew Weiss ("Weiss"), and Keffer Development Services, LLC ("Keffer").

Former football co-offensive coordinator Matthew Weiss intentionally accessed Plaintiffs' highly sensitive, personal, private, and intimate information. The victims include former and current student-athletes at the University. From approximately 2015 to 2023, Weiss used University and third-party systems to access the Plaintiffs' private information. Weiss exploited weak cybersecurity practices at the University and Keffer, which maintained databases with sensitive student-athlete information.

Weiss would not have been able to gain such access without his employment position and University-issued credentials. His access to confidential data includes at least medical records, passwords, and personal cloud accounts. The Department of Justice has already begun notifying affected individuals, including Plaintiffs.

Plaintiffs wish to serve discovery requests upon both the University and the Regents. The proposed discovery request is attached as **Exhibit B**. Those discovery requests seek the identification of Internet websites on which Plaintiffs' images, videos, or personal information are believed to have been potentially profiled. Plaintiffs also wish to ask for all domain names registered by Weiss, if known. Plaintiffs also request for identification of documents and information pertaining to

the discovery of Weiss's actions related to the disclosure of Plaintiffs' personal information.

Plaintiffs also request to issue discovery to Keffer. The proposed discovery request is attached as **Exhibit C**. Plaintiffs seek to identify which of Keffer's employees interacted with the University, Weiss, and the Regents. Plaintiffs seek to identify information about individuals who, based on their roles, work duties, and work activities at Keffer, have information about Weiss's unauthorized access to Plaintiffs' images, videos, and information. Plaintiffs also wish to serve upon Keffer requests for documents and requests for information associated with Plaintiffs' online accounts. *Id.*

Finally, Plaintiffs wish to propound discovery on Weiss to ask what exactly he did. What actions did he take? On whose computer? When? Which records or electronic data exist to identify the existing and prospective harms Plaintiffs (and others similarly situated) face? Plaintiffs want to learn the harm(s) that have occurred and determine how they can be mitigated. The proposed discovery requests in this respect are attached as **Exhibit D**.[1]

---

[1] As discussed more fully below, it is possible that Weiss will refuse to answer Plaintiffs' requests pursuant to his Fifth Amendment right against self-incrimination. But even assuming Weiss can properly invoke a relevant privilege, doing so does not render Plaintiffs' requests to him moot. To the contrary, the Court may draw a negative inference from Weiss's refusal to answer in these civil proceedings. *See Hoxie v. Drug Enforcement Admin.*, 419 F.3d 477, 483 (6th Cir. 2005) ("The Supreme Court has held that a negative inference can be drawn from a failure to testify in civil proceedings, and that drawing such an inference violates neither the Fifth Amendment nor Due

The University has identified Plaintiffs as "victims." The focus now must be to determine quickly the extent of the harm and what needs to be done to stop further harm. Plaintiffs need to learn what exactly is known about their personal information that has been compromised (*i.e.*, personal photographs, passwords, protected-health information, and other deeply personal information). Plaintiffs need details about what is known and unknown, how electronic intrusions and extractions occurred, and what harm has already happened. Plaintiffs need this information so that they can protect themselves and determine for themselves what actions they can take to mitigate the harm, including as to any and all financial accounts owned or controlled by them that may be compromised, and to protect to the extent practicable against further invasion their privacy rights.

Plaintiffs granted the University and the Regents until June 2, 2025, to answer the Complaint. ECF No. 12. Keffer has been served. ECF No. 13. The Complaint is being served on Weiss. Plaintiffs granted the University and the Regents time to respond because the conduct and consequences of Defendants' actions are serious and because it will take some time to respond to the allegations.

But Plaintiffs in the meantime need to obtain the evidence. The sooner they can determine the scope of information released into the world, the sooner the harm

---

Process."). Plaintiffs' requests to Weiss thus remain both relevant and timely. What is important now is that Plaintiffs be permitted to ask.

can be mitigated. Additionally, early discovery will substantially contribute to progress, and that early progress is going to be needed to keep this case moving at a reasonable pace. The discovery is also reasonably narrow because the focus now is on protecting the victims of Defendants' actions. Finally, the discovery is helpful to identify class membership which will help determine what the best steps are to remedy the harm already done.

Plaintiffs rely upon their accompanying brief in support. Concurrence in the relief was sought in writing in detail on Monday April 7, 2025, but was not obtained. Nevertheless, counsel is motivated to work with Defendants and counsel to reasonably handle this case and focus on a just and speedy resolution for all.


Date: April 8, 2025                    Respectfully Submitted,

                                       By:   /s/*Parker Stinar*
                                             Parker Stinar
                                             Michael Grieco
                                             Bryce Hensley *(admission pending)*
                                             **STINAR GOULD GRIECO &**
                                             **HENSLEY, PLLC**
                                             101 N. Wacker Dr., Floor M,  Suite 100
                                             Chicago, Illinois 60606
                                             T: (312) 728-7444
                                             parker@sgghlaw.com
                                             mike@sgghlaw.com
                                             bryce@sgghlaw.com

By:   /s/*Patrick Lannen*
      Patrick Lannen
      Erik Johnson
      **STINAR GOULD GRIECO &**
      **HENSLEY, PLLC**
      550W. Merrill Street, Suite 249
      Birmingham, Michigan 48009
      patrick@sgghlaw.com
      (269) 370-1746
      erik@sgghlaw.com
      (248) 221-8561

      *Counsel for Plaintiffs*


By:    /s/ *Brian Glasser*
      Brian A. Glasser (*admission pending*)
      **BAILEY & GLASSER LLP**
      1055 Thomas Jefferson Street,
      NW, Suite 540
      Washington, DC 20007
      Phone: (202) 463-2101
      bglasser@baileyglasser.com


By:    /s/ *Bart Cohen*
      Bart D. Cohen
      **BAILEY & GLASSER LLP**
      1622 Locust Street
      Philadelphia, PA 19103
      Phone: (267) 973-4855
      bcohen@baileyglasser.com


By:    /s/ *David Selby, II*
      David L. Selby, II *(admission pending)*
      **BAILEY & GLASSER LLP**
      3000 Riverchase Galleria, Suite 905
      Birmingham AL 35244
      Phone: (205) 628-7575
      dselby@baileyglasser.com

By: */s/ D. Todd Mathews*
  D. Todd Mathews
  **BAILEY & GLASSER LLP**
  210 W. Division Street
  Maryville IL 62062
  Phone: (618) 418-5180
  tmathews@baileyglasser.com


By: */s/ John W. Barrett*
  John W. Barrett
  Katherine E. Charonko (*admission pending*)
  **BAILEY & GLASSER LLP**
  209 Capitol Street
  Charleston, WV 25301
  Phone: (304) 345-6555
  jbarrett@baileyglasser.com
  kcharonko@baileyglasser.com

  *Counsel for Plaintiffs*


By: /s/ *Aimee H. Wagstaff*
  Aimee H. Wagstaff (admission pending)
  Benjamin Gillig (admission pending)
  **WAGSTAFF LAW FIRM**
  940 N. Lincoln Street
  Denver, CO 80203
  Tel: 303-376-6360
  awagstaff@wagstafflawfirm.com
  bgillig@wagstafflawfirm.com


  *Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE 1, and JONE DOE 2,
                              Plaintiffs,

vs.                                                 Case No. 25-CV-10806
                                                    Hon. Mark A. Goldsmith
MATTHEW WEISS; the REGENTS            Mag. David R. Grand
OF THE UNIVERSITY OF
MICHIGAN; the UNIVERSITY OF
MICHIGAN; KEFFER
DEVELOPMENT SERVICES, LLC,

                              Defendants.

---

**BRIEF IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY**

---

## STATEMENT OF THE QUESTION PRESENTED

I.    Plaintiffs have been identified as victims by state and federal authorities following a completed criminal investigation, but they have not been provided with any detailed information to help them determine how to mitigate harm. Accordingly, Plaintiffs have drafted narrow discovery requests in this putative class action, after having carefully studied what information exists, and what does not, as part of their prosecution of this case. In such instance, is expedited discovery appropriate?

Plaintiffs answers: "Yes."

The University and the Regents answer: "No."

The other Defendants are expected to answer: "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

### <u>Cases</u>

*Arista Recs., LLC v. Does 1–4*, 2007 WL 4178641 (W.D. Mich. Nov. 20, 2007)..12

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) ............................................................20

*Brown v. United States*, 356 U.S. 148 (1958) ........................................................20

*Dunkin' Donuts Inc.*, 47 F. Supp. 2d 867 (E.D. Mich. 1999) ................................21

*Fabreeka Int'l Holdings, Inc. v. Haley*, 2015 WL 5139606 (E.D. Mich. Sept. 1, 2015) .......................................................................................................................17

*Hamilton Group Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307 (S.D. Fla. 2018)....22

*In re Edmond*, 934 F.2d 1304 (4th Cir. 1991) ........................................................21

*In re Paradise Valley Holdings, Inc.*, 2005 WL 3841866 (Bankr. E.D. Tenn. Dec. 29, 2005) .............................................................................................................12

*Johnson v. U.S. Bank Nat'l Ass'n*, 2009 WL 4682668 (S.D. Ohio Dec. 3, 2009) ..12

*Klein v. Harris*, 667 F.2d 274 (2d Cir. 1981) ........................................................21

*Lashuay v. Delilne*, 2018 WL 317856 (E.D. Mich. Jan. 8, 2018) ..........................12

*Lawson v. Murray*, 837 F.2d 653 (4th Cir.), *cert. denied*, 488 U.S. 831 (1988)......20

*Malam v. Adducci*, 2020 WL 12738917 (E.D. Mich. Apr. 30, 2020) .............. 11, 12

*Malibu Media, LLC v. Doe*, 2015 WL 224807 (E.D. Mich. Jan 15, 2015) ............12

*McGautha v. California*, 402 U.S. 183 (1971).......................................................20

*Mitchell, Lewis & Staver, Co. v. Valley Farms Supply, LLC*, 2025 WL 703778

    (W.D. Mich. Mar. 5, 2025) ................................................................22

*N. Atl. Operating Co., Inc. v. JingJing Huang*, 194 F. Supp. 3d 634 (E.D. Mich.

    2016) ..............................................................................................11, 13

*O'Mara v. Cmty. Mental Health of Washtenaw Cnty.*, 2022 WL 1194071 (E.D.

    Mich. Apr. 21, 2022) ......................................................................17

*Pedrina v. Han Kuk Chun*, 906 F. Supp. 1377 (D. Haw.1995) ...............................21

*Sanders v. Genesee Cnty., Michigan*, 2023 WL 4543488 (6th Cir. July 14, 2023) .21

*Spevack v. Klein*, 385 U.S. 511 (1967) ..................................................................20

*Strike 3 Holdings, LLC v. Doe*, 2025 WL 714440 (E.D. Mich. Mar. 5, 2025).......12

*Trificant v. C.I.R.*, 884 F.2d 258 (6th Cir. 1989) ..............................................19, 20

*U.S. v. All Assets & Equip. of West Side Bldg. Corp.*, 843 F. Supp. 377 (N.D. Ill.

    1993), *aff'd*, 58 F.3d 1181 (7th Cir. 1995) ........................................21

*U.S. v. Island Park*, 888 F. Supp. 419 (E.D.N.Y. 1995) ........................................21

*U.S. v. Parcels of Land*, 903 F.2d 36 (1st Cir. 1990).............................................21

*Whitfield v. Hochsheid*, 2002 WL 1560267 (S.D. Ohio July 2, 2002) ...................12

## **Statutes**

42 U.S.C. § 1983....................................................................................................10

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ...............................................10

Mich. Comp. Laws § 600.2919a ...........................................................................10

Stored Communication Act, 18 U.S.C. § 2701 *et seq.* ...........................................10

Title IX, 20 U.S.C. § 1681 *et seq.* ......................................................................10

## **Rules**

Federal Rule of Civil Procedure 26 ......................................................................11

## STATEMENT OF FACTS

### A. The Flaw Letter.

On March 2023, the University delivered a letter to one of the Plaintiffs, a former student athlete, saying that a "flaw" (the "**Flaw**") in its computer network compromised Plaintiff's private data. **Exhibit E**–name redacted. The letter describes itself as a "follow-up" to an "investigation" by the "University of Michigan Police Department." *Id.* at 1. In the preamble, the letter offers to provide Plaintiff "some additional information, as well as offer you identity theft protection coverage." *Id.*

#### 1. "Additional Information—the "What happened" Section.

In the first section, titled "What happened," the University explains it "identified" "in late December 2022, potentially unauthorized activity in your U-M Google account." *Id.* As part of its "investigation," the University "discovered that a 'threat actor' manipulated a *flaw* in [the U-M Google account] self-service password-recovery to change your password and gain unauthorized access to your U-M Google account." *Id.* These accounts provide more than email service. They offer cloud storage, file sharing, and other repositories to store personal information. The letter defines the self-service recovery function as "Forgot password." *Id.*

Plaintiff did not know at the time that the "threat actor" was Weiss, a high-paid employee at the University. Evidently, "these findings were escalated" to "University police, which subsequently launched a criminal investigation." *Id.*

1

Based on its investigation, the **Flaw** in "Forgot password" permitted the "threat actor" to "gain[] unauthorized access to some of your accounts and/or data." *Id.* While the University did not further identify or describe the Flaw, it explained that, because of the Flaw, the "threat actor" "also logged into your U-M account management settings, where 'they' may have viewed and/or changed your password recovery phone number and password recovery email address." *Id.*

In the same paragraph, the letter states definitively that "[a]dditionally, 'they' logged into your M+ Google email and/or Google Drive." *Id.* However, the University "cybersecurity team was unable to tell which emails or files 'they' may have accessed or deleted while logged in, or whether your email settings were altered. *Id.*

The letter confirms that personal information *was* accessed. The letter states, "law enforcement investigations have determined 'they' [referring to the 'threat actor'] were able to use information in your account to access additional personal information, which may include access details for accounts linked to your U-M email address (online banking, social media, password management, etc.)." *Id.*

In sum, while written in past tense and defensive in tone, the letter discloses without qualification that it was the University's technology **Flaw** that permitted one of its own employees to access Plaintiff's personal online banking, social media, and password management data.

2

## 2.  The "What we are doing about this" section.

The next section of the letter states that, "as part of the response and investigation," the University took certain actions including that it:

- Randomized your password, so the 'threat actor' would no longer be able to access your account;
- Identified and fixed the flaw in the password reset application;
- Engaged University police so they could pursue a criminal investigation;
- Continue[s] to support the University police and other U-M 'inquiries' into the "matter."

*Id.*

No other detail is provided about how the Flaw came to exist, what exactly it is, or how it was used, though the University claims in the letter that it was "fixed." *Id.* Missing is any other basic newspaper-article-like details about the who, what, when, where, how, or in which medium, and what clues and facts the "investigation" revealed or further harm to be avoided. *Id.*

## 3.  The "What you should do" section.

Next, the letter directed Plaintiff to reset her password, if she had not already done so after December 23, 2022. *Id.* The letter also provided a phone number for technology support. *Id.* It provided advice to enable a "two-factor authentication" feature and a "security check up." *Id.* at 2. The letter does not provide any reason why this advice was not previously provided.

3

### 4. The "U-M provided identify theft protection" section.

In the next section, the University suggested that Plaintiff remain vigilant of fraud and identity theft. *Id.* The University offered one-year complimentary "LifeLock Standard™ identity theft protection" and described features that it believed that protection offered. *Id.* The letter does not specify who else, if anyone, was offered, or why a limited group was selected.

### 5. The "additional identity theft guidance" section.

The letter next included three "identity theft subsections," including "account credit monitoring," "consider a credit freeze," and "report identity theft." *Id.* at 3. In the first subsection, the letter identified the three major credit bureaus and suggested each has a free service for further fraud alert protection. *Id.* In the next, the letter suggested that a "credit or security 'freeze'" would permit Plaintiff to "restrict[] access" to her credit report, "which makes it more difficult for identity thieves to open new accounts in your name." *Id.* Finally, the letter suggested reporting identity theft if Plaintiff believed she was a victim. *Id.*

### 6. The "Find out more about securing your devices and accounts" section.

The letter next identified three websites for Plaintiff to help her protect herself. *Id.* at 4. It also identified the University information technology service department website as a resource. *Id.*

4

### 7. The "We apologize for this issue" section.

The letter concluded by acknowledging "how important your personal information is" and that the University "***deeply regret***[s] that this situation occurred." *Id.* (emphasis added). The University stated it "is committed to maintaining a secure computing environment, preserving the confidentiality of the information we maintain, and constantly reviewing and improving our security practice." *Id.*

The University apologized "for any inconvenience this incident has caused you" and offered the email address privacy@umich.edu and a local phone number, with the phrase "Data Incident Notification Letter from Feb. 2023," as another resource to "talk to someone about this situation." *Id.*

The letter was signed by Sol Bermann, the Chief Information Security Officer, Executive Director of Information Assurance for the University. *Id.*

### B. The Mega Victim Case Assistance Program (MCAP) Email.

By email dated March 27, 2025, another Plaintiff contacted the Department of Justice because she received an email confirming she was a ***victim*** of the "incident" described in **Exhibit E**. *See* **Exhibit F**—name redacted.

That same day, the Mega Victim Case Assistance Program ("MCAP") of the United States Attorney's Office returned Plaintiff's email and stated that Plaintiff was, *in fact*, "a ***victim*** of unauthorized access and aggravated identity theft." The

email states that "the defendant" "gained unauthorized access to the email, social media, and cloud storage accounts of 2,000+ victims between 2015 and 2023." *Id.*

The depth and ominous nature of the victimization is then highlighted. The email states that "[t]housands of *candid*, *intimate* photographs and videos have been seized from the [criminal] defendant's electronic storage devices and his cloud storage accounts." *Id.* The email specifies that "[m]any" of the photographs and images "*show victims naked*" and that "[s]ome show victims *engaged in explicit sexual acts*." *Id.*

The email indicates that there is an active FBI investigation ongoing. The email recommends resetting passwords across online accounts, especially those containing "sensitive information," including but not limited to financial accounts, email accounts, file storage accounts, and social media accounts. *Id.* The email strongly advises against reusing passwords and endorses "additional" levels of electronic authentication. Finally, the email offers resources for further identify theft information about safe practices. *Id.*

### C. Text Messages with the FBI

Plaintiffs have been contacted by and spoken with the FBI. In these additional communications, the FBI has communicated that there are "updates" about the investigation for these "victims" and others. Due to the personal and sensitive nature of the text messages, Plaintiffs will coordinate with defense counsel to submit these

communications to the Court and not place them on the docket, and they will work with defense counsel to deliver to counsel in a secure method the evidence Plaintiffs have adduced thus far.

### D. 2025 Victim Notification Correspondence

Earlier this calendar year, another member of the putative class represented by the undersigned, who has indicated a desire to be a class representative, received an email from the Department of Justice Victim Notification System ("VNS"). **Exhibit G**—name redacted. The email is from a DOJ "victim witness professional" and provides that the class member was identified as a victim of at least Weiss.

The email advises the victim of her rights: to be protected from the accused; to reasonable, accurate, and timely notice of court and parole proceedings; generally not to be excluded from court proceedings; to be heard in any release, plea, sentencing, or parole proceeding; to confer with Government attorneys; to full and timely restitution; to be free from delay; to be treated with fairness, respect, and dignity for privacy; to be informed of a plea bargain or deferred prosecution; and informed of her rights. *Id.*

The email correspondence goes on to identify other rights and indicate that there are many, many victims in addition to Plaintiffs. However, the letter provides scant to no detail of the depth of the victimization, how similar the crimes are, where

the evidence is, what it is, when victims may learn of the evidence, or be heard, or further protect themselves. *Id.*

## PROCEDURAL POSTURE

### A. The First Complaint.

On Friday, March 21, 2025, Plaintiffs filed this putative class action case. ECF No. 1. Since that time, more than a dozen current and former University students have engaged counsel to this case. This action was the first filed but there are at least five additional and substantially similar cases, Case Nos. 25-10855, 25-10870, 25-10876, 25-10946, and 25-10951.

The Complaint in this case asserts Plaintiff Doe 1 was a student athlete at the University between 2017 and 2018 and was a member of the Women's Gymnastics team. *Id.* ¶ 1. Plaintiff Jane Doe 2 was a student athlete at the University between 2017 and 2023 and was a member of the Women's Soccer team. *Id.* ¶ 3.

The Complaint alleges defendant Matthew Weiss was employed by the University, and that the Regents and the University failed in their duties to supervise and monitor Weiss in a manner that would prevent him from breaching student privacy that was entrusted to the University. *Id.* ¶¶ 13, 18, and 19. Plaintiffs allege the University therefore had a heightened duty and breached it by failing to safeguard the computer network against Weiss being able to use his University electronic

credentials and University provided intellectual and physical property to access their private information, images, and videos. *Id.* ¶¶ 30, 35, 37, 91.

Similar allegations are made against Keffer, a technology company that the University authorized to be in contact with Weiss and to do so in connection with student athlete services including for athletic training. *Id.* ¶¶ 41, 44, 45. Class allegations are made based on the public reports from the United States Attorney's Office and others, including the University, that the unauthorized access by Weiss was a result of the Flaw, and affected thousands of student-athlete victims across at least an eight-year period. *Id.* ¶¶ 55. The Complaint goes on to allege a failure to properly supervise Weiss against all non-Weiss defendants and includes various assertions of gross negligence and recklessness. *Id.* ¶¶ 57–59, 63–72, 80–83.

It appears uncontested, particularly as evident from **Exhibit E**, that thousands of other victims and absent class members were harmed and are continuing to be harmed in the same manner and by the same means as Plaintiffs. ECF No. 1, ¶¶ 109–122. Plaintiffs understand it is not disputed that Weiss was an employee and that he accessed personal information of many victims, including Plaintiffs, while a University employee and that as a result of his use of electronic credentials provided to him, he compromised Plaintiffs' personal information. Allegations of this ilk are throughout the Complaint. *See id.* ¶¶ 77–79, 109–122.

The Complaint currently includes fifteen claims: (1) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count I); (2) violation of the Stored Communication Act, 18 U.S.C. § 2701 *et seq.* (Count II); (3) violation of Title IX, 20 U.S.C. § 1681 *et seq.*, focusing on the more pervasive effects of the misconduct as victimizing women (Count III); (4) violation of 42 U.S.C. § 1983 for State Created Danger (Count IV); (5) violation of 42 U.S.C. § 1983 for Failure to Train and Supervise (Count V); (6) Invasion of Privacy--Intrusion Upon Seclusion (Count VI); (7) Gross Negligence (Count VII); (8) Negligent Hiring (Count VIII); (9) Negligent Training (Count IX); (10) Negligent Supervision (Count X); (11) Negligent Entrustment (Count XI); Negligent Retention (Count XII); Trespass to Chattels (Count XIII); Common Law Conversion (Count XIV); and Statutory Conversion under Mich. Comp. Laws § 600.2919a (Count XV).

### B. Additional Complaints.

After this case was filed, Case Nos. 25-10855, 25-10870, 25-10876, 25-10946, and 25-10951 followed. They include the same claims, including beginning with the Computer Fraud and Abuse Act, as this case does, followed by the Stored Communications Act, as this case does, claims under Title IX, claims under 42 U.S.C. § 1983, and then including the state law claims ranging from invasion of privacy to trespass to chattel and various institutional gross negligent and related causes of action, as this case does. Each Complaint alleges the same misconduct,

and same proposed class definition, the same technical language, and a similar structure of the allegations as this case first did.

### C. Criminal Case Status.

The Government filed the indictment against Weiss on March 30, 2025. Case No. 25-CR-20165-NGE-APP. He pleaded not guilty on March 24, 2025. He is currently on bond and the criminal case matter is scheduled for a status conference on April 15, 2025. There is a protective order entered. No materials have been shared with the Plaintiffs.

### EXPEDITED DISCOVERY STANDARD

Under Federal Rule of Civil Procedure 26, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by the civil rules, by stipulation, or by court order. Fed. R. Civ. P. 26(d)(1). A party can begin discovery before their Rule 26(f) conference, if ordered by the district court, upon a showing of "'good cause.'" *Malam v. Adducci*, 2020 WL 12738917, at *1 (E.D. Mich. Apr. 30, 2020) (quoting *N. Atl. Operating Co., Inc. v. JingJing Huang*, 194 F. Supp. 3d 634, 637 (E.D. Mich. 2016)); *see also*, *Malibu Media, LLC v. Doe*, 2015 WL 224807, at *1 (E.D. Mich. Jan 15, 2015); *Strike 3 Holdings, LLC v. Doe*, 2025 WL 714440, at *1 (E.D. Mich. Mar. 5, 2025).

Within this Circuit, courts have found good cause "when the true identities of the defendants are unknown, when the moving party alleges infringement, when the scope of the discovery sought is narrow, and when expedited discovery would substantially contribute to moving the case forward." *N. Atl. Operating Co., Inc.*, 194 F. Supp. 3d at 637 (citing *Arista Recs., LLC v. Does 1–4*, 2007 WL 4178641, at *1 (W.D. Mich. Nov. 20, 2007)). Particularly relevant here, courts within the Sixth Circuit have found good cause for expedited discovery in cases "involving requests for injunctive relief, challenges to personal jurisdiction, *class actions*, and claims of infringement and unfair competition." *Malam*, 2020 WL 12738917, at *1 (emphasis added) (citing *Lashuay v. Delilne*, 2018 WL 317856, at *3 (E.D. Mich. Jan. 8, 2018) (citing *In re Paradise Valley Holdings, Inc.*, 2005 WL 3841866, at *2 (Bankr. E.D. Tenn. Dec. 29, 2005)).

This case is a putative class action. Courts have also found good cause when expedited discovery seeks information "relevant to the membership of [a] proposed class." *Johnson v. U.S. Bank Nat'l Ass'n*, 2009 WL 4682668, at *1 (S.D. Ohio Dec. 3, 2009) (citing *Whitfield v. Hochsheid*, 2002 WL 1560267, at *1 (S.D. Ohio July 2, 2002)).

In *N. Atl. Operating Co., Inc.*, a court in this district granted limited discovery (and a preliminary injunction) to allow discovery that is similar to what Plaintiffs are requesting here. *N. Atl. Operating Co., Inc.*, 194 F. Supp. 3d at 635. In that case,

the plaintiff alleged the defendants were selling counterfeit versions of ZIG-ZAG®
brand cigarette paper products without authority. *Id.* There, the court authorized the
plaintiff to serve expedited discovery upon the suppliers who allegedly provided
counterfeit products to the original defendants that were first identified by the
plaintiff as the sellers of the goods. *Id.* at 637.

The court authorized the plaintiff to serve expedited discovery on the
defendants to identify, among other information,

> "(2) any and all known Internet websites on which the
> DHGate.com Defendants trade in ZIG-ZAG® products;
> (3) any and all known domain names registered by the
> DHGate.com Defendants; and (4) any and all financial
> accounts owned or controlled by the DHGate.com
> Defendants. (Dkt. 189, p. 27.)."

*Id.*

The court noted the "limited scope and time-sensitive nature of this discovery
request, and Plaintiffs' offer to post a $10,000 bond to compensate for any damages
suffered as a result of any wrongful restraint" as part of its decision. *Id.* at 637.

## ANALYSIS

Plaintiffs seek expedited discovery to protect themselves, preserve sensitive
information, mitigate harm, and discover information that could be lost. Plaintiffs
are willing to provide the same bond of $10,000 that was found adequate in *N. Atl.
Operating Co., Inc.*, if necessary.

13

## A. Discovery Plaintiffs Wish to Send.

### 1.  As to Keffer

Plaintiffs wish to serve discovery upon Keffer for the names, addresses, and locations of Keffer's employees that interacted with the University, Weiss, or the Regents. Plaintiffs seek to identify information about individuals who, based on their roles, work duties, and work activities, have information about the access to Plaintiffs' images, videos, and information. Plaintiffs also wish to serve upon Keffer requests for documents and requests for information associated with Plaintiffs' online accounts. The proposed discovery request is attached as **Exhibit C**.

### 2.  As to the University and to the Regents

Plaintiffs wish to serve discovery upon both the University, and the Regents, requesting the identification of all known Internet websites on which Plaintiffs' images, videos, or personal information are believed to been potentially profiled. Plaintiffs also wish to ask for all domain names registered by Weiss, if known. Plaintiffs also request identification of documents and information pertaining to the discovery of Weiss's actions.

The purpose of these requests is for Plaintiffs to learn the who, when, where, and under what circumstances, the University learned of Weiss's actions. Plaintiffs also are motivated to learn what exactly is known about the information

compromised (*i.e.*, what "information" does that consist of? What details are known about the information?).

It is a fact Plaintiffs' private information was compromised. What Plaintiffs want to know are the details about how that occurred and what exactly is known (and unknown) so that they can determine for themselves what actions they can take to mitigate the harm, including as to any and all financial accounts owned or controlled by them that may be compromised. The proposed discovery is attached as **Exhibit B**.

### 3. As to Weiss

Plaintiffs wish to ask Weiss what exactly he did. What actions did he take? On whose computer? Why? When? Which records or electronic data exist to identify the existing and prospective harms Plaintiffs (and others similarly situated) face? Plaintiffs' motivations for these questions are to learn the harm(s) that have occurred and those harms that can be mitigated. The proposed discovery is attached as **Exhibit D**.

### B. The Discovery Requested Is Narrowly Tailored.

The discovery Plaintiffs request is narrowly tailored because it is focused on what is known about the injuries that the "victims" (the Government and the University are the ones who first used the term "victim") have sustained. Plaintiffs seek expedited discovery into what those harms are, how they are known, and other

15

facts relevant to their claims, class certification, and injunctive relief requests. Plaintiffs are not seeking a deposition as part of expedited discovery (though they are not waiving the right to do so). Plaintiffs narrowly tailored requests are not overly broad. They are not seeking "any and all" on sweepingly broad categories of information. The requests are also important to representing a class and/or subclasses.

The expedited discovery seeks information about the already completed investigation, who the witnesses are, what was known, when, how, and what information specifies who the victims are, in what senses, based on what evidence, and what images, personal information, and videos exist and where they are located. Plaintiffs have specifically identified the discovery sought and included their proposed discovery requests.

Since the investigative work by the University is already done, the burden on Defendants will be minimal. Much if not all of the information sought is the kind that was assembled as part of the University's investigation. Keffer would be and is believed to be in no different of a position, particularly given this "mass victim" case. *See* **Exhibits E, F, and G**. All of this information is relevant to Plaintiffs' claims as well as to determining membership of the proposed classes. Courts have found that in such instances, the good cause for expedited discovery on those

targeted issues is satisfied. *See Malam*, 2020 WL 12738917, at *2 (E.D. Mich. Apr. 30, 2020) (citing *Johnson*, 2009 WL 4682668, at *2.

### C. The Discovery Will Substantially Contribute to Moving the Case Forward.

Plaintiffs have been working hard and are also close to filing a motion for injunctive relief. Courts in the Sixth Circuit have recognized that expedited discovery is often necessary to prosecute a motion for injunctive relief. *Fabreeka Int'l Holdings, Inc. v. Haley*, WL 5139606, at *5 (E.D. Mich. Sept. 1, 2015); *see also Malam*, 2020 WL 12738917, at *2; *N. Atl. Operating Co., Inc.*, 194 F. Supp. 3d at 637; *Arista Recs., LLC*, 2007 WL 4178641, at *1 ("Plaintiffs have been able to establish good cause in situations involving requests for a preliminary injunction where the moving party alleges infringement."); *O'Mara v. Cmty. Mental Health of Washtenaw Cnty.*, 2022 WL 1194071, at *3 (E.D. Mich. Apr. 21, 2022).

The purpose of the discovery is to move this case along at a fair and deliberate speed, rather than wait months or years for this case to move forward. Plaintiffs are entitled to know the who, when, where, and under what circumstances Plaintiffs have been harmed and, in the words of the University, become "victims." Plaintiffs do not have to wait for this information, as the Government's victim correspondence indicates, and as the Federal Rules of Civil Procedure permit to be gathered now.

Plaintiffs intend to fairly and diplomatically work with defense counsel to drive this case to a timely conclusion. To do so, they need to begin the process now

of obtaining the information the Defendants have already, including learning when the University became aware of Weiss's actions, how, and what the University investigations that followed have revealed. Plaintiffs are willing to spend the time and energy now to learn what information was compromised and what personal data was compromised and what details are known about the information.

Plaintiffs will dig into the data to learn about what electronic intrusions, and extractions occurred, and what exactly is known, or not known, about the breaches. Plaintiffs have engaged experts and paid out of pocket to assist them. Plaintiffs require this information so that they can determine for themselves what additional actions they can or may want to take to mitigate the harm, including as to any and all financial accounts owned or controlled by them that may be compromised, and to protect to the extent practicable further invasion against their privacy rights.

While Plaintiffs will be reasonable about the Defendants' civil litigation discovery rights and even their liability defenses, Plaintiffs are confident in their claims and have researched them in detail. A potential claim of a civil defense is not grounds to delay or detract Plaintiffs from prosecuting their claims or obtaining discovery.

Plaintiffs recognize Weiss may invoke his Fifth Amendment right against self-incrimination and avoid discovery. It is conceivable the other Defendants may

do so as well. However, the ability to send the discovery nonetheless is critical. Plaintiffs known Defendants may invoke Fifth Amendment rights.

The undersigned recently obtained summary judgment in a similar posture in a Stored Communications Act claim, one of the leading claims in each of these *Weiss* cases (Count II in each of the Complaints). *Mitchell, Lewis & Staver, Co. v. Valley Farms Supply, LLC*, 2025 WL 703778, at *6 (W.D. Mich. Mar. 5, 2025).

The expedited discovery requests will necessarily and narrowly advance what could be an otherwise unwieldy case that will grow in size and scope and suffer from no progress if this Motion is not granted. Even as to Weiss, and notwithstanding the Fifth Amendment, the discovery can and should unfold. Invoking the Fifth Amendment is permitted, but it does not and should not stop substantial progress in this case. There are Rules of Evidence and various precedential decisions that guide progress even in that circumstance. Plaintiffs have rights and they should be allowed to prosecute their claims. For all of these reasons, the discovery will substantially contribute to advancing this case so that it does not take a glacial pace.

### D. Plaintiffs Will Be Prejudiced, Defendants Will Not, Without Discovery.

There is evidently significant information adduced but a small fraction to none of it is known to Plaintiffs. Plaintiff victims have been identified. *See* **Exhibits E– G**. Their images have been captured, some of them highly sexualized, and of the most sensitive nature. Their identities have been stolen. But the detail of this

information is known to Defendants, only. Yet, Defendants recognize Plaintiffs are victims and have not provided them but scant, vague information. Harm to Plaintiffs is substantially outweighed by any alleged harm to Defendants, because there is no harm to Defendants.

### E.  Preservation of Evidence Is Needed in This Particular Case for Plaintiffs.

Plaintiffs are required to build and prosecute their case. They suspect that some of the evidence that tends to support or rebut the claims and defenses will evaporate into the ether. Plaintiffs are rightfully concerned that the evidence *uniquely applicable to them* and this civil case has not necessarily been the focus of any investigation. *That* evidence should be located, preserved, and protected, particularly given the size and scope of this case. Plaintiffs are dedicated to carefully maintaining and electronically maintaining folders and records that can be shared and accessed by the relevant parties and organized systematically by time, date, topic, and event. To carry out that goal, and to achieve the just and speedy determination of this case, granting this request for expedited discovery will help, in contrast to delaying the victims the information they seek for months if not years.

## <u>CONCLUSION</u>

Plaintiffs have spent many hours reviewing where this case stands to date and what is to come in order to move it along reasonably and fairly. Plaintiffs have reviewed the evidence, drafted narrowly tailored discovery requests specific for this

phase, engaged experts, and are committed to substantial progress without trampling the rights of other litigants. For each of these reasons, Plaintiffs request entry of an Order substantially similar to that attached as **Exhibit A** authorizing their expedited discovery requests.

Date: April 8, 2025                    Respectfully Submitted,

By:   /s/*Parker Stinar*
        Parker Stinar
        Michael Grieco
        Bryce Hensley *(admission pending)*
        **STINAR GOULD GRIECO & HENSLEY, PLLC**
        101 N. Wacker Dr., Floor M,  Suite 100
        Chicago, Illinois 60606
        T: (312) 728-7444
        parker@sgghlaw.com
        mike@sgghlaw.com
        bryce@sgghlaw.com


By:   /s/*Patrick Lannen*
        Patrick Lannen
        Erik Johnson
        **STINAR GOULD GRIECO & HENSLEY, PLLC**
        550W. Merrill Street, Suite 249
        Birmingham, Michigan 48009
        patrick@sgghlaw.com
        (269) 370-1746
        erik@sgghlaw.com
        (248) 221-8561

        *Counsel for Plaintiffs*

By:    */s/ Brian Glasser*
       Brian A. Glasser (*admission pending*)
       **BAILEY & GLASSER LLP**
       1055 Thomas Jefferson Street,
       NW, Suite 540
       Washington, DC 20007
       Phone: (202) 463-2101
       bglasser@baileyglasser.com

By:    */s/ Bart Cohen*
       Bart D. Cohen
       **BAILEY & GLASSER LLP**
       1622 Locust Street
       Philadelphia, PA 19103
       Phone: (267) 973-4855
       bcohen@baileyglasser.com

By:    */s/ David Selby, II*
       David L. Selby, II *(admission pending)*
       **BAILEY & GLASSER LLP**
       3000 Riverchase Galleria, Suite 905
       Birmingham AL 35244
       Phone: (205) 628-7575
       dselby@baileyglasser.com

By:    */s/ D. Todd Mathews*
       D. Todd Mathews
       **BAILEY & GLASSER LLP**
       210 W. Division Street
       Maryville IL 62062
       Phone: (618) 418-5180
       tmathews@baileyglasser.com

22

By:     /s/ John W. Barrett
        John W. Barrett
        Katherine E. Charonko (*admission pending*)
        **BAILEY & GLASSER LLP**
        209 Capitol Street
        Charleston, WV 25301
        Phone: (304) 345-6555
        jbarrett@baileyglasser.com
        kcharonko@baileyglasser.com

        *Counsel for Plaintiffs*


By:     /s/ *Aimee H. Wagstaff*
        Aimee H. Wagstaff (admission pending)
        Benjamin Gillig (admission pending)
        **WAGSTAFF LAW FIRM**
        940 N. Lincoln Street
        Denver, CO 80203
        Tel: 303-376-6360
        awagstaff@wagstafflawfirm.com
        bgillig@wagstafflawfirm.com

        *Counsel for Plaintiffs*

23

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2025, I electronically filed the foregoing Motion for Expedited Discovery, Brief in Support and corresponding exhibits with the Clerk of the Court using the ECF system which will send notification of such filing to all parties registered.

 s/*Parker Stinar*
Parker Stinar
**STINAR GOULD GRIECO &
HENSLEY, PLLC**
